# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KENNETH L. HORTON, as the Representative for and on behalf of Payees KENNETH L. HORTON and NUTECH MEDICAL, INC., | ) ) ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | C.A. No. 2018-0537-KSJM |
| ORGANOGENESIS INC., | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) ) | |

## MEMORANDUM OPINION

Date Submitted: April 25, 2019
Date Decided: July 22, 2019

John L. Reed, Matthew Denn, Peter H. Kyle, DLA PIPER LLP (US), Wilmington, Delaware; *Counsel for Plaintiff and Counterclaim Defendant Kenneth L. Horton.*

Carl D. Neff, Kasey H. DeSantis, FOX ROTHSCHILD LLP, Wilmington, Delaware; Matthew C. Baltay, FOLEY HOAG LLP, Boston, Massachusetts; *Counsel for Defendant and Counterclaim Plaintiff Organogenesis Inc.*

**McCORMICK, V.C.**

The parties to a 2017 merger dispute the sellers' entitlement to post-closing consideration in light of the buyer's claim for indemnification. The buyer seeks indemnification for two categories of losses, and the sellers have moved to dismiss the buyer's claim. For the first category, the sellers contend that the buyer's purported notice of its indemnification claim failed to satisfy the contractual notice requirements. For the second category, the sellers contend that the buyer's request for indemnification is not yet ripe because relevant costs have yet to be incurred. This decision concludes that the buyer's notice as to the first category satisfied the merger agreement's notice requirements. As to the second category, the Court agrees with the sellers that the indemnification claim is not yet ripe. Accordingly, the sellers' motion to dismiss is denied in part and granted in part.

## I.      FACTUAL BACKGROUND

The facts are drawn from the buyer's Amended Verified Counterclaim for Contractual Indemnification, the documents incorporated by reference therein, and matters not subject to reasonable dispute, including allegations admitted in the buyer's answer to the complaint.[1]

In March 2017, defendant and counterclaim plaintiff Organogenesis Inc. ("Organogenesis") acquired NuTech Medical, Inc. ("NuTech") for a mix of cash and stock. Both Organogenesis and NuTech operated in the regenerative medicine field.

---

[1] C.A. No. 2018-0537-KSJM Docket ("Dkt.") 9, Answer; Dkt. 20, Am. Countercl.

The parties executed a merger agreement ("Merger Agreement")[2] on March 18, 2017, and the merger closed on March 24, 2017. The Merger Agreement designated plaintiff and counterclaim defendant Kenneth L. Horton as the sellers' representative.[3]

Under the Merger Agreement, Organogenesis agreed to pay the sellers consideration comprised of $20 million in cash and 1,794,455 shares of Organogenesis common stock.[4] Of the cash payment, (1) $12 million was to be paid at closing, (2) $1 million was to be paid on each quarterly anniversary of the closing for the first four quarters following the closing, and (3) $4 million was to be paid on the fifteen-month anniversary of the closing, or June 24, 2018.[5] The Merger Agreement defines the last two categories of cash payments as "Post-Closing Cash Consideration"[6] and further requires Organogenesis to pay simple interest on the Post-Closing Cash Consideration at a rate of 6% per annum, due with the last cash payment.[7]

---

[2] Am. Countercl. Ex. A (cited as "Merger Agr.").

[3] Merger Agr. § 16.13.

[4] *Id.* § 1.1.

[5] *Id.*; *see also id.* § 3.4(a)–(b).

[6] *Id.* § 1.1.

[7] *Id.* The equity consideration was transferred in full at closing, but divided into two categories—non-restricted and restricted equity. *Id.* The restricted equity was subject to forfeiture in the event certain marketing capabilities were restricted. *See id.* §§ 3.4(c)–(d), 14.1.

The sellers agreed to indemnify Organogenesis, subject to certain restrictions and caps, for eight categories of "Losses," two categories of which are relevant in this case. The first category includes Losses incurred in connection with any breaches of representations and warranties in the Merger Agreement by the sellers and NuTech.[8] The second category includes Losses incurred in connection with litigation pending in the United States District Court for the Northern District of Alabama captioned *MiMedx Group, Inc. v. NuTech Medical, Inc.*, C.A. No. 2:15-cv-00369-VEH (the "MiMedx Litigation").[9] The Merger Agreement defines "Loss" to include "any damage, liability, demand, claim, action, cause of action, cost, . . . or other loss or out-of-pocket expense[.]"[10]

Section 12.1(d) of the Merger Agreement imposed restrictions on how and when Organogenesis could assert claims for indemnification for breaches of representations or warranties.[11]

---

[8] *Id.* § 12.2(a)(i).

[9] *Id.* § 12.2(a)(v).

[10] *Id.* § 14.1 ("'Loss' means, with respect to any Person, any damage, liability, demand, claim, action, cause of action, cost, deficiency, penalty, Tax, fine or other loss or out-of-pocket expense (including reasonable attorneys', accountants', consultants' and other advisors' fees), whether or not arising out of a third party claim, against or affecting such Person; provided, that the Parties agree that 'Loss' shall not include consequential damages that are not reasonably foreseeable under the circumstances, special damages, punitive damages or indirect damages (including diminution in value) (other than any such special, punitive, indirect or unforeseeable consequential damages actually paid to a third party).").

[11] *See id.* § 12.1(d).

As to timing, the Merger Agreement precluded the parties from raising indemnification claims after expiration of the contractual limitation period applicable to the corresponding representations and warranties, unless those claims were timely and appropriately noticed.[12] The contractual limitation period for representations and warranties relevant to this litigation terminated fifteen months after the closing—*i.e.*, on June 24, 2018.[13]

As to process, the Merger Agreement required Organogenesis to provide notice of its claims as follows:

> deliver[] written notice to the other party of an indemnification claim for a breach of the representations, warranties and covenants (stating in reasonable detail the nature of, and factual and legal basis for, any such claim for indemnification and, if known, an estimate and calculation of the amount of Losses resulting therefrom) . . . .[14]

If Organogenesis delivered the requisite notice before June 24, 2018, its indemnification claims for breaches of representations and warranties would "survive until resolved or judicially determined."[15] The Merger Agreement did not

---

[12] *Id.*

[13] *Id.* The Merger Agreement extended the survival period to three years after the closing for certain representations and warranties defined as the "Significant Representations" and outlined in Section 12.1(c) of the Merger Agreement. *Id.* § 12.1(c).

[14] *Id.* § 12.1(d).

[15] *Id.*

4

impose similar restrictions on indemnification claims resulting from the MiMedx Litigation.

Organogenesis failed to make multiple payments post-closing. On March 24, 2018, Organogenesis did not make the last of the quarterly $1 million payments. Then, on June 24, 2018, Organogenesis did not make either the final $4 million post-closing payment or the contemporaneously due interest payment.

The parties exchanged correspondence concerning Organogenesis's non-payments. On June 23, 2018, Organogenesis sent a letter to Horton (the "June 23 Notice"), the express purpose of which was "to preserve [Organogenesis's] rights under the Merger Agreement[.]"[16] This Notice informed Horton of five post-closing "issues."[17] For each issue, the Notice included a short factual description. The Notice further stated that "these matters are ongoing and may involve breaches of representations and warranties in the Merger Agreement."[18]

On June 28, 2018, Horton's counsel responded challenging the sufficiency of the June 23 Notice. Horton further asserted that Organogenesis had breached its payment obligations under the Merger Agreement and demanded immediate payment of $5,917,465.75 for the unpaid Post-Closing Cash Consideration and

---

[16] Am. Countercl. Ex. B at 1.

[17] *Id.* at 1–2.

[18] *Id.* at 2.

interest thereon.[19] Horton gave Organogenesis until July 3, 2018, to satisfy the demand. Organogenesis did not accede to the demand.

On July 24, 2018, Horton commenced this litigation. Horton's Verified Complaint asserts three counts for breach of contract, specific performance, and declaratory judgment. Organogenesis answered the Verified Complaint and asserted one counterclaim for contractual indemnification. Horton moved to dismiss Organogenesis's counterclaim. In response, Organogenesis filed an amended counterclaim for contractual indemnification. Horton renewed his motion to dismiss and the parties completed briefing on March 14, 2019.[20] The Court heard oral argument on April 25, 2019.[21]

## II. LEGAL ANALYSIS

Horton has moved to dismiss Organogenesis's amended counterclaim pursuant to Court of Chancery Rule 12(b)(6). On a motion pursuant to Rule 12(b)(6), the Court accepts "all well-pleaded factual allegations in the Complaint as true, [and] accept[s] even vague allegations in the Complaint as 'well-pleaded' if

---

[19] This demand also reflected $15,000 in "Losses" for which the sellers sought indemnification from Organogenesis.

[20] Dkt. 26, Pl.'s Opening Br. in Supp. of His Mot. to Dismiss Def.'s Am. Verified Countercl. ("Pl.'s Opening Br."); Dkt. 34, Organogenesis Inc.'s Answering Br. in Opp'n to Pl.'s Mot. to Dismiss Def.'s Am. Verified Countercl. ("Def.'s Ans. Br."); Dkt. 41, Pl.'s Reply Br. in Further Supp. of His Mot. to Dismiss Def.'s Am. Verified Countercl. ("Pl.'s Reply Br.").

[21] Dkt. 49, Tr. of Oral Argument on Pl.'s Mot. to Dismiss Def.'s Am. Verified Countercl. ("Oral Arg. Tr.").

they provide the defendant notice of the claim[.]"[22] The Court "is not, however, required to accept as true conclusory allegations without specific supporting factual allegations."[23] The Court draws "all reasonable inferences in favor of the plaintiff, and den[ies] the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[24]

As discussed above, Organogenesis seeks indemnification for two categories of Losses: those incurred in connection with alleged breaches of representations and warranties in the Merger Agreement and those incurred in connection with the ongoing MiMedx Litigation.[25] Horton argues that Organogenesis fails to state a claim in connection with either category.

*First*, Horton contends that Organogenesis's claim for indemnification for alleged breaches of representations and warranties must be dismissed because (i) the June 23 Notice failed to comply with the notice requirements set forth in Section 12.1(d) of the Merger Agreement and (ii) Organogenesis fails to adequately plead damages resulting from the subject breaches.[26]

---

[22] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[23] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal quotation marks and citations omitted).

[24] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor*, 812 A.2d at 896–97).

[25] Am. Countercl. ¶¶ 2, 27–31.

[26] Pl.'s Opening Br. at 21–23, 28–29.

"Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[27] "To determine what contractual parties intended, Delaware courts start with the text."[28] "When the contract is clear and unambiguous, [Delaware Courts] will give effect to the plain-meaning of the contract's terms and provisions."[29]

Under the plain meaning of the Merger Agreement, the June 23 Notice satisfies Organogenesis's notice obligations. Section 12.1(d) of the Merger Agreement requires that a party claiming indemnification for breaches of representations and warranties must state in writing and "in reasonable detail" the nature of and both the factual and legal bases for the claim.[30] The June 23 Notice states in reasonable detail the nature of and factual bases for Organogenesis's indemnification claim arising out of the alleged breaches of representations and warranties. The Notice lists five different issues underlying the alleged breaches and provides a paragraph-length description as to each issue.

---

[27] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (internal quotation marks and citation omitted).

[28] *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (citing *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003)).

[29] *Osborn*, 991 A.2d at 1159–60.

[30] Merger Agr. § 12.1(d).

Horton argues that the June 23 Notice fails to provide reasonable detail for the legal basis for Organogenesis's indemnification claim. Horton notes that the June 23 Notice does not identify the provisions of the Merger Agreement that the sellers allegedly breached. Instead, the Notice states that the five identified issues "may involve breaches of representations and warranties."[31] The Merger Agreement, however, only required "reasonable detail;" it does not require references to specific sections of the Merger Agreement.[32] The reference to the Agreement, standing alone, is sufficiently reasonable to identify the legal basis for Organogenesis's claim, particularly given that the sellers are charged with knowledge of their representations and warranties in the Merger Agreement.[33]

---

[31] Pl.'s Opening Br. at 22–23 (emphasis omitted); Pl.'s Reply Br. at 7–8 (emphasis omitted).

[32] Horton also appears to contend that the June 23 Notice's lack of reference to a specific section of the Merger Agreement renders Organogenesis's pleadings insufficient. *See* Pl.'s Opening Br. at 22–23. The amended counterclaim, however, does plead the requisite elements of a predicate breach of contract claim—a contractual obligation, breach, and damages. *See* Am. Countercl. ¶¶ 11–15 (alleging the existence of representations and warranties), 22–26 (alleging breaches of representations and warranties and resulting damages), 30 (generally alleging damages).

[33] *See W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2007 WL 3317551, at *9 n.82 (Del. Ch. Nov. 2, 2007) ("It is a basic principle of contract law that a person is bound by the terms of a contract he signs, even if he has not read the agreement or is otherwise unware of its terms." (citing *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989))), *aff'd*, 985 A.2d 391 (Del. 2009); *Russykevicz v. State Farm Mut. Auto Ins. Co.*, 1994 WL 369519, at *4 (Del. Ch. June 29, 1994) ("Knowledge of the [plaintiff's] insurance policy provision that provided for uninsured motorist arbitration upon written demand by either the insured or insurer is imputed to plaintiff.").

9

Organogenesis has satisfied the standard for pleading damages as to its claim for indemnification for breaches of representations and warranties. At the pleadings stage, "[a]llegations regarding damages can be pled generally."[34] The amended counterclaim generally alleges that it is "entitled to a reduction of Post-Merger Cash Consideration owing and a forfeiture of Equity Consideration in an amount to be determined in this action."[35] Beyond this general allegation, the amended counterclaim alleges that Organogenesis has incurred "fees and expenses of outside counsel and consultants" related to government compliance efforts, "unexpected costs and expenses" related to a NuTech product, and a decline in excess of $5 million in customer revenue in 2017—all in connection with alleged breaches of representations and warranties by the sellers.[36]

For these reasons, Horton's motion to dismiss Organogenesis's claim for indemnification for breaches of representations and warranties fails.

*Second*, Horton contends that Organogenesis's indemnification claim for Losses resulting from the MiMedx Litigation must be dismissed as unripe because Organogenesis has not yet incurred any Losses from that Litigation.[37]

---

[34] *In re Ezcorp Inc. Consulting Agreement Deriv. Litig.*, 2016 WL 301245, at *30 (Del. Ch. Jan. 25, 2016).

[35] Am. Countercl. ¶ 30.

[36] *Id.* ¶¶ 23, 25–26.

[37] Pl.'s Opening Br. at 23–28.

Section 12.2(a) of the Merger Agreement states: the sellers will "indemnify and hold harmless Buyer . . . from and against any Losses that any Buyer Indemnitee *incurs* . . . resulting from, arising in connection with or caused by: (v) the litigation captioned 'MiMedx Group, Inc. v. Nutech Medical, Inc. et al' in the U.S. District Court, Northern District of Alabama . . . ."[38] The Merger Agreement does not define "incur."

"Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."[39] Black's Law Dictionary defines incur as "[t]o suffer or bring on oneself (a liability or expense)."[40] The Delaware Supreme Court has previously interpreted "incur" in the context of legal fees to mean that the party "must have been liable for a payment at some point."[41]

Based on the above definitions of "incur," Horton argues that under Section 12.2(a), Organogenesis cannot seek indemnification for Losses resulting from the MiMedx Litigation that it has not become liable for or for which it has no payment obligation.[42] Organogenesis responds that whether Organogenesis has become

---

[38] Merger Agr. § 12.2(a) (emphasis added).

[39] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006).

[40] *Incur*, Black's Law Dictionary (11th ed. 2019). Merriam-Webster similarly defines incur as "to become liable or subject to." *Incur*, Merriam-Webster, https://www.merriam-webster.com/dictionary/incur (cited in Pl.'s Opening Br. at 25).

[41] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 684 (Del. 2013).

[42] Pl.'s Opening Br. at 25–26.

liable for a payment in connection with the MiMedx Litigation is irrelevant. According to Organogenesis, Losses are not limited to monetary amounts but also include any "demand, claim, action, [or] cause of action" such as the MiMedx Litigation.[43] And Organogenesis says that because it has incurred—or become subject to—the MiMedx Litigation, it is entitled to indemnification.[44]

Organogenesis's position ignores the purpose of the Merger Agreement's indemnification provisions—to indemnify and hold harmless the indemnitee from and against Losses incurred.[45] If Organogenesis suffers no costs, fees or adverse judgments in the MiMedx Litigation, there is no reason to indemnify or hold harmless Organogenesis.

Organogenesis's amended counterclaim does not allege that Organogenesis has incurred any Losses in connection with the MiMedx Litigation. Accordingly, Organogenesis's claim for indemnification for the MiMedx Litigation is not ripe and is dismissed without prejudice.

## III. CONCLUSION

Horton's motion to dismiss the amended counterclaim is denied in part and granted in part. Horton's motion to dismiss Organogenesis's claim for

---

[43] Def.'s Ans. Br. at 14.

[44] *Id.*

[45] Merger Agr. § 12.2.

indemnification for breaches of representations and warranties is DENIED. Horton's motion to dismiss Organogenesis's claim for indemnification for potential Losses resulting from the MiMedx Litigation is GRANTED, and Organogenesis's claim for indemnification for potential Losses resulting from the MiMedx Litigation is DISMISSED WITHOUT PREJUDICE.